IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Thomas James Duggan, | ) | |
| | ) | C.A. No.3:08-649-MJP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sisters of Charity Providence Hospitals, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     This matter is before the court on the Report and Recommendation of United States

Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b) and

Local Civil Rule 73.02 of the District of South Carolina. Plaintiff Thomas James Duggan

("Duggan") alleges gender discrimination in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"). In her Report and Recommendation, Magistrate Judge Gossett recommends

granting Defendant's motion for summary judgment. Duggan timely filed objections to the

Report and Recommendation. Defendant Sisters of Charity Providence Hospitals ("the Hospital")

timely filed a response to Duggan's objections. After review, the court adopts the Report and

Recommendation and grants Defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

     The relevant facts are largely undisputed and the Report and Recommendation ably sets

them out. Essentially, Duggan is a certified registered nurse anesthetist ("CRNA") who was, at

all times relevant, employed by the Hospital. By all accounts, he was a satisfactory employee,

though there is evidence in the record that Duggan was deemed by some of his coworkers as

having a "short fuse." There is also evidence in the record that Duggan was counseled about his temper and interpersonal skills in performance evaluations during his employment; however, he was not in danger of termination prior to January 19, 2007.

On that date, Duggan had set up an operating room for a procedure in which he was serving as the CRNA. Shortly before the procedure was to occur, he was advised by the operating room charge nurse, Gail Byers, that the procedure was being moved to another room because Byers believed it was more appropriate for the type of procedure being performed. Duggan, by his own admission, became upset. He distinctly remembers that he told Byers "this is bullshit." Numerous witnesses overheard this confrontation, which occurred in an area where patients are held prior to surgery. Clinical nurse manager Jean Windham ("Windham") was one of those witnesses. After Duggan's initial outburst he left to compose himself. Witnesses reported that when he returned, he was still visibly angry to the point where the surgeon performing the procedure had to ask him to control himself. Duggan does not dispute that fact in his objections. He concedes he committed misconduct, but asserts that he should have received no more than a three-day suspension.

Windham reported Duggan's conduct to her supervisor, Martha Stratton, Vice President of Surgical Services. Windham also reported that Duggan used the "f word." Duggan denies this, but Windham reported to Stratton that he did. Stratton in turn reported the incident to her supervisor, Joan Ross, Chief Nursing Officer of the Hospital. After consulting with Stratton and Rick Grooms, Vice President of Human Resources, Ross made the decision to terminate Duggan's employment. Duggan was advised of his termination by Rick Thomas, Chief CRNA. Thomas was not otherwise involved in Duggan's termination.

Duggan unsuccessfully grieved his termination. He subsequently filed an administrative charge with the EEOC alleging gender discrimination. Upon receipt of his right to sue notice, he instituted this action. Following the close of discovery, the Hospital filed its motion for summary judgment. Duggan filed a response to the motion and the Hospital filed a reply. On August 7, 2009, the magistrate issued her Report and Recommendation recommending that the Hospital's motion be granted. Duggan filed objections to the Report and Recommendation, and the Hospital filed a response to Duggan's objections.

## II. REPORT AND RECOMMENDATION

Magistrate Judge Gossett recommends granting Defendant's motion for summary judgment. She found that Duggan was unable to establish a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because he could not show that similarly situated female employees engaged in the same or similar misconduct and were disciplined less severely. The basis for this finding was two-fold. First, she found that while there was evidence female employees had used profanity, there was no evidence they did so in a patient care area, rendering Duggan's conduct dissimilar to his purported comparators. She further found that even if their misconduct was similar, Duggan failed to demonstrate that Ross, the relevant decisionmaker, knew of that misconduct and consciously chose to treat Duggan differently. The magistrate also found that Duggan failed to identify any evidence that the Hospital's stated reason for his termination was pretextual.

## III. OBJECTIONS

While Duggan sets out five objections, they are essentially the same. Duggan concedes that Ross was the sole decisionmaker with regard to his termination. He further concedes that

Ross terminated every employee she knew about, including three females, who had engaged in any misconduct similar to Duggan's. Rather, Duggan asserts that because there was testimony in the record that female CRNA's had used profanity in Thomas's presence, that knowledge must be imputed to Stratton because she supervised Thomas, and to a lesser extent Grooms, presumably because as Vice President for Human Resources he is in the chain of command of all Hospital employees. He further argues that once imputed, this constructive knowledge taints the decision-making process because Ross conferred with Stratton and Grooms before terminating Duggan's employment. He relies on this lone theory to support his objections to the magistrate's findings that he did not establish a prima facie case of discrimination; that the Hospital produced a legitimate, non-discriminatory reason for his termination; and that he failed to produce evidence of pretext. Rather than belaboring the point by analyzing each element of the McDonnell Douglas test, the court will simply consider Duggan's implied knowledge argument because rejection of that proposition would mandate granting the Hospital's summary judgment motion.

## IV. DISCUSSION OF THE LAW

A.    Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine issue of material fact." *Ballinger v. N.C.*

*Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.

The *Reeves* Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the *Reeves* Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other

evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" *Dennis*, 290 F.3d at 649 (quoting *Reeves*, 530 U.S. at 148-49)).

B.      Imputed Knowledge

In each of his five objections, Duggan asks the court to impute to Stratton and Grooms Thomas's knowledge that female CRNA's had engaged in similar misconduct without being terminated. He cites no law in support of this argument. "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001) (rejecting imputation of knowledge in discrimination cases "because it equates constructive knowledge with actual intent"). "When evaluating a charge of employment discrimination, [a court] must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270 (11th Cir. 2002). A plaintiff charging an employer with disparate discipline must show the decisionmaker "consciously overlooked" misconduct by others outside the protected class "when he disciplined [plaintiff] more severely." *Moreland v. Miami-Dade County*, 255 F.Supp.2d 1304, 1313 (S.D.Fla. 2002) (internal quotation omitted). The mere fact that a decisionmaker held a position in the plaintiff's chain of command "is not evidence that he personally knew of each comparators' misconduct or the discipline each supervisor imposed." *Id*. at n.5. And "unless [the decisionmakers] knew of the [comparators' misconduct] the events cannot be considered in determining whether [plaintiff and his comparators] are similarly situated." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003); *accord, Anderson v. WBMG-42*, 253 F.3d 561, 567 n.3 (11th Cir. 2001) (comparator's misconduct irrelevant where no evidence existed that middle manager brought misconduct to decisionmaker's attention); *see also, Brochu*

*v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002) ("[N]either a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge."). Accordingly, as a matter of law Thomas's knowledge cannot be imputed to Stratton and Grooms.

Even if Thomas's knowledge could be so imputed, Duggan fails to demonstrate how that would alter the outcome of his case. Duggan concedes that Ross was the actual decisionmaker. He is not asking the court to impute Thomas's knowledge to Ross, a proposition that the court would reject in light of the precedent cited above. He relies on *Hill v. Lockhead Martin Logistics Management, Inc.*, 354 F.3d 277, 291 (4th Cir. 2004), but *Hill* specifically rejected imputation:

> We can discern no precedential or practical basis upon which to depart from the inquiry as articulated and applied by the Supreme Court in *Reeves* – and to expand the contours of the acts – by embracing a test that would impute the discriminatory motivations of subordinate employees having no decisionmaking authority to the employer, and make them agents for purposes of the employment acts, simply because they have influence or even substantial influence in effecting a challenged decision.

*Id*. at 291. Further, even if imputation were a viable avenue, *Hill* requires that Duggan show that Stratton or Grooms "possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." *Id.* His concession that only Ross was "principally responsible for the decision" to terminate him defeats his imputation theory.

Accordingly, Duggan's argument that Thomas's knowledge that female CRNA's had engaged in similar misconduct should be imputed to Stratton or Grooms fails as a matter of law. And even if it did not fail, he presents no proof that Stratton or Grooms actually made the decision to terminate him. Instead, he concedes that the decisionmaker was Ross.

Therefore, based on the foregoing, the court adopts Magistrate Judge Gossett's Report

and Recommendation and grants Defendant's motion for summary judgment and it is therefore

ORDERED that Defendants' motion for summary judgment, docket number 31, is granted.

IT IS SO ORDERED.


s/Matthew J. Perry, Jr.,_____
Matthew J. Perry, Jr.,
Senior United States District Judge

Columbia, South Carolina

September 29, 2009